BOLESLAW FALKOWSKI, as Administrator, etc., of ROSE FALKOWSKI, Deceased, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Erie County, February 17, 1941.

*Dinah R. Rosenblatt* [*Michael Catalano* on the brief], for the plaintiff.

*Dudley, Stowe & Sawyer* [*Roy P. Ohlin* of counsel], for the defendant.

DIAMOND, J. Defendant moves for a judgment dismissing the complaint under subdivision 5 of rule 107 of the Rules of Civil Practice, on the ground that there is an existing final judgment rendered on the merits determining the same cause of action between the parties.

Defendant also moves, in the alternative, for a judgment dismissing the complaint under subdivision 5 of rule 106 of the Rules of Civil Practice, on the ground that the complaint does not state facts sufficient to constitute a cause of action.

In addition, defendant makes application for an order staying all proceedings by the plaintiff until payment is made to defendant of the costs of a former action between the parties which resulted in defendant's favor.

In April, 1935, this plaintiff, individually and as administrator of the estate of Rose Falkowski, commenced an action in the City Court of Buffalo against this defendant. The object of the action was to recover $500 on a policy of insurance issued on the life of Rose Falkowski. In that action, in which plaintiff was represented by the same attorney as in the instant case, issue

was joined, and a bill of particulars served by plaintiff of the matters alleged in his reply to defendant's answer. A trial was had in City Court which resulted in a judgment in plaintiff's favor for one dollar and seventy-five cents damages and two dollars and eighty cents costs, the damages representing the amount of the premiums paid on the policy.

Plaintiff appealed from that judgment to this court, with the result that the judgment of the City Court was reversed, and judgment entered in plaintiff's favor for $500 besides interest and costs. Defendant then appealed to the Appellate Division of the Fourth Department, where the judgment of this court was reversed and the judgment of the City Court affirmed in March, 1938 (254 App. Div. 633).

The matter apparently remained at rest until July 10, 1939, when there was served on defendant the summons which commenced the instant action. No complaint was served until December 2, 1940, after defendant's attorneys moved for an order to dismiss for failure to serve a complaint.

The complaint herein is evidently grounded in equity; its apparent object is to reform the same policy which was sued on in the prior action and to correct the policy application so that " yes " will be substituted for " no " in the answers to certain questions regarding the health of the assured, her medical care, etc. The basis alleged for the requested changes is that the defendant's agent inserted the wrong answers for plaintiff who was unable to read or write English.

First to be considered is defendant's motion for judgment dismissing the complaint under subdivision 5 of rule 107. Defendant contends that there is an existing final judgment of a court of competent jurisdiction rendered on the merits, determining the same cause of action between the parties. Plaintiff resists this contention by citing section 112-d of the Civil Practice Act. This section, which became effective on September 1, 1939, reads as follows: " Action on contract no bar to action to reform. A judgment denying recovery in an action upon an agreement in writing shall not be deemed to bar an action to reform such agreement and to enforce it as reformed."

Counsel have cited no decisions under this section, and independent research on the part of the court has disclosed none. A careful consideration of the cases which preceded the enactment of section 112-d and of the history of the enactment of this section, leads to the conclusion that plaintiff's reliance thereon is ill founded.

Section 112-d of the Civil Practice Act was passed by the Legislature following the recommendation of the Law Revision Com-

mission in 1939. The 1939 report of the Commission, page 207 *et seq.*, contains an exhaustive analysis of the background of the Commission's recommendation. At the time, four new sections were recommended, 112-a through 112-d, all having to do with election of remedies. It was the aim of the Commission to attempt to eliminate and prevent injustices which had resulted and might result from a perhaps too strict adherence to the ancient doctrine of election of remedies, which might be simply stated as follows: Once one has elected a remedy one may not thereafter seek to enforce an inconsistent remedy. The Commission's report cites cases to illustrate the results flowing from a strict application of this doctrine.

With the apparent object of the Commission there can be no disagreement. Under our law every effort is made to give a person feeling aggrieved his day in court for the adjudication of his grievance. So, if a litigant is mistaken in the form of the remedy which he chooses, he should not be prevented from employing the correct form in an attempt to obtain the proper remedy for his grievance. For example, should an action be brought on an agreement in writing, and should the litigant be precluded, by the parol evidence rule, from proving all the facts of his case, under section 112-d he would not now be deemed barred from another effort in an action to reform the agreement and enforce it as reformed. The section thereby prevents the injustice which might possibly result under the old rule which may have deprived the litigant of his day in court by reason of a technical rule of evidence.

A discussion, in this connection, of election of remedies is bound to bring one close to the shadowy line which divides the domain of *res judicata.* The principle of *res judicata* has been recently restated by the Court of Appeals as follows: " When issues on the same subject-matter have once been settled by litigation between the same parties or their privies, before a court of competent jurisdiction, and the estoppel of the judgment is mutual, that is to say that the other party would be bound if the original decision had been to the contrary, then in the interest of reasonable finality of litigation that decision should be conclusive." (*Elder* v. *New York & Penn. Motor Express, Inc.*, 284 N. Y. 350.)

To the same general effect is the Restatement of Contracts, section 449, as follows: " A contractual duty or duty to make compensation is discharged by adjudication where a judgment of any court, having jurisdiction over the subject-matter and of the parties, is rendered in a litigation between the party owing the duty and the party entitled to its performance in which the existence and

extent of the duty are issues that in fact were or ought to have been finally determined."

The Restatement's definition follows closely the idea expressed by CARDOZO, Ch. J., in *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.* (250 N. Y. 304). The court there said: "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated." That is the settled law in this State. (*Wille* v. *Maier*, 256 N. Y. 465.)

It seems clear, therefore, that it could not have been the intention of the Legislature, in enacting section 112-d, to abolish the doctrine of *res judicata*. The principle of *res judicata* is too deeply grounded in our law, and the reasons for the doctrine are too plain, to require citation of authority. Suffice it to say that it prevents a litigant once defeated on the merits from again raising the same issue in another court of original jurisdiction. It is ordinarily a just and effective means of terminating litigation. Obviously, there must be some brake on litigiousness.

An analysis of the complaint in the instant case, and a comparison thereof with the pleadings in plaintiff's first action, lead to the conclusion that the same subject-matter was "settled by litigation between the same parties * * * before a court of competent jurisdiction, and the estoppel of the judgment is mutual * * * the other party would be bound if the original decision had been to the contrary." (*Elder* v. *New York & Penn. Motor Express, Inc., supra.*)

In the words of the Court of Appeals in the *Elder* case, "In the interest of reasonable finality of litigation that decision should be conclusive." A reading of the record on the appeal in plaintiff's first action reinforces this conclusion.

Plaintiff, in his City Court action at law, had an adequate remedy. The allegations now newly pleaded were litigated fully in that action. The plaintiff was allowed full leeway on the trial to prove the new matter now set forth in the complaint against which defendant has moved. Having been unsuccessful in his first attempt to recover against defendant, plaintiff now seeks to employ a new *form* of action. But the *substance* of his attempt to recover remains the same. Surely, there is no justification in permitting him to multiply his lawsuits on this policy against this defendant by using the device of changing the form of action. It could not have been the intention of the Legislature to permit such a situation. It could not have been the aim of the Legislature to turn its back on the public policy which discourages a multiplicity of suits.

The intention was to prevent, in a proper case, the operation of a technicality in a manner to work injustice. The facts of plaintiff's complaint in the case at bar were litigated and disposed of on the merits. The same issues as now presented were or " might have been so litigated " in his first lawsuit. They are now *res judicata*.

Defendant's motion for judgment dismissing the complaint under subdivision 5 of rule 107 of the Rules of Civil Practice is, therefore, granted, without costs. In view of this determination, it becomes unnecessary to pass on the remaining motions made by defendant.